b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

VANESSA LAMB,                         CIVIL DOCKET NO. 1:21-CV-01937
Appellant

VERSUS                                DISTRICT JUDGE JOSEPH

UNITED STATES
COMMISSIONER OF SOCIAL                MAGISTRATE JUDGE PEREZ-MONTES
SECURITY,
Appellee

---

## REPORT AND RECOMMENDATION

Before the Court is claimant Vanessa Lamb's ("Lamb's") appeal from the denial of her claim for Social Security disability income benefits ("DIB").

Because Lamb has not carried her burden of proving she was disabled before her disability status expired on March 31, 2019, the Commissioner's finding that she is not entitled to DIB should be affirmed, and Lamb's appeal should be dismissed.

I.    Background

    A.    Procedural Background

        1.    Lamb's First Application for Benefits

Lamb filed an application for disability insured benefits ("DIB") on October 21, 2015 and an application for supplemental security income ("SSI") on October 29, 2015, alleging a disability onset date of July 26, 2015 (ECF No. 10-1 at 78). Those applications were denied initially.  ECF No. 10-1 at 78.  A *de novo* hearing was held before an administrative law judge ("ALJ") on January 3, 2017.  ECF No. 10-1 at 78. The ALJ found that Lamb had not engaged in substantial gainful activity since

July 26, 2015. ECF No. 10-1 at 81. The ALJ found that Lamb suffered from a severe impairment of degenerative disc disorder, but did not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 of 20 C.F.R. part 404, Subpart P ("Appendix 1"). ECF No. 10-1 at 81-82. The ALJ found that Lamb had the residual functional capacity to perform the full range of light work, and could not perform any of her past relevant work. ECF No. 10-1 at 83, 87. The ALJ concluded that a finding of "not disabled" was directed by Medical-Vocational Guidelines 202.21 and 202.14, and concluded that Lamb was not under a disability from July 26, 2015 through the date of her decision on May 11, 2017. ECF No. 10-1 at 88.

Lamb requested a review of the ALJ's decision. The Appeals Council declined to review is and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner"). ECF NO. 10-1 at 93.

### 2.    Lamb's Second Application for Benefits

Lamb filed a second application for DIB and SSI on December 4, 2017, alleging a disability onset date of May 1, 2014,[1] due to back injury, diabetes, depression, high blood pressure, and cholesterol. ECF No. 10-1 at 299, 301, 360. Those applications were denied initially. ECF No. 10-1 at 150. A *de novo* hearing was held on March 5, 2019, at which Lamb appeared with her attorney and a VE. ECF No. 10-1 at 55. The

---

[1] At her January 2021 administrative hearing, Lamb's representative amended her disability onset date from May 5, 2015 to March 31, 2019, which is the date she was last insured for DIB. ECF No. 10-1 at 47.

ALJ found that Lamb met the disability insured requirements through March 31, 2019, and that she had not engaged in substantial gainful activity since May 12, 2017 (her alleged onset date). ECF No. 10-1 at 133. The ALJ found that Lamb has severe impairments of degenerative disc disease and diabetes mellitus (ECF No. 10-1 at 131), but does not have an impairment or combination of impairments that meets or medically equals a listing in Appendix 1. ECF No. 10-1 at 134. The ALJ further found that Lamb has the residual functional capacity to perform the full range of light work, and is not able to do any of her past relevant work. ECF No. 10-1 at 134. The ALJ concluded that Medical-Vocational Guideline 202.14 directed a finding of "not disabled" from May 12, 2017 through the date of her decision on April 24, 2019. ECF No. 10-1 at 140-141.

Lamb requested a review of the ALJ's decision. Upon review, the Appeals Council remanded the case to the ALJ for evaluation of Lamb's medically determinable mental impairments. ECF No. 10-1 at 147. The Appeals Council directed the ALJ to: (1) evaluate Lamb's mental impairments in accordance with the special technique described in 20 C.F.R. 202.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described; and (2) proceed with the sequential evaluation process as necessary. ECF No. 10-1 at 147.

A second *de novo* hearing was held before a second ALJ on January 29, 2021, at which Lamb appeared with her attorney and a vocational expert ("VE"). ECF No.

10-1 at 33.  In a decision on March 3, 2021, the ALJ found that Lamb had disability insured status through March 31, 2019, and that she has not engaged in substantial gainful activity since May 12, 2017.  ECF No. 10-1 at 10.  The ALJ found that Lamb has severe impairments of lumbar degenerative disc disease, radiculopathy, facet arthropathy, and obesity, but does not have an impairment or combination of impairments that meet or medically equal a listing in Appendix 1 of 20 C.F.R. Part 404, Subpart P.[2]  ECF No. 10-1 at 19.  The ALJ further found that Lamb has the residual functional capacity to perform light work with the following limitations: only occasionally climbing ramps and stairs; only occasionally balancing, stooping, kneeling, crouching, and crawling; and never climbing ladders, ropes, or scaffolds.  ECF No. 10-1 at 22.  The ALJ found that Lamb has not been able to do any of her past relevant work since May 12, 2017.  ECF No. 10-1 at 23.

On September 12, 2020, Lamb's age category changed to advanced age.  ECF No. 10-1 at 24.  The ALJ found that, prior to September 12, 2020, there were light work jobs existing in significant numbers that Lamb could do, such as cafeteria worker, fast food worker, and sales attendant.  ECF No. 10-1 at 24.  Therefore, because Lamb was not disabled at any time through March 31, 2019, the date she was last insured, she was not entitled to DIB.  ECF No. 10-1 at 25.

---

[2] The ALJ found that Lamb's mental impairments of depression and anxiety are non-severe. ECF No. 10-1 at 20-21.

4

However, beginning on September 12, 2020, Medical-Vocational Guideline 202.14 directed a finding of "disabled." ECF NO. 10-1 at 25. The ALJ found Lamb became disabled on September 12, 2020 and her disability was expected to last 12 months, so she was awarded SSI benefits beginning on September 12, 2020. ECF No. 10-1 at 25.

Lamb requested a review of the ALJ's decision to deny her DIB, but the Appeals Council declined to review it (ECF No. 10-1 at 6) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Lamb then filed this appeal for judicial review of the Commissioner's final decision. Lamb contests the ALJ's finding that she is not entitled to DIB, contending: (1) the ALJ failed to follow the Appeals Council's remand order and, thus, remand is necessary for the ALJ to apply the "Paragraph B analysis" appropriately to Lamb's mental impairment of depression; and (2) the ALJ failed to articulate a rational medical and evidentiary basis for ruling that the Lamb could perform the activities identified by the residual functional capacity for light work on a regular and continuous basis. ECF Nos. 13, 19.

B.    Medical Records

In June 2015, Lamb was evaluated in the emergency room for right flank pain radiating to her right leg for two days. ECF No. 10-1 at 570. Lamb stated she had a

history of arthropathy[3] for which she took metformin.  ECF No. 10-1 at 570.  Lamb's recent radiology reports showed a normal lumbar spine, and that her kidney, ureter, and bladder were unremarkable.  ECF NO. 10-1 at 575.  However, Lamb had cholelithiasis (gallstones) and diffuse fatty infiltration of a mildly enlarged liver.  ECF No. 10-1 at 575.  Lamb was also diagnosed with sciatic leg pain, for which she was prescribed Ondansetron, and lumbar pain.  ECF No. 10-1 at 576-77.

In August 2015, Lamb was again seen for abdominal pain and nausea.  ECF No. 10-1 at 542.  Lamb stated she had it for "months" and that Lortab did not work, but morphine helped.  ECF No. 10-1 at 542.  She was diagnosed with chronic abdominal pain.  ECF No. 10-1 at 545.

In October 2015, Lamb had a diabetic eye exam.  ECF NO. 10-1 at 539.  Lamb was diagnosed with diabetes, suspected glaucoma in both eyes, nuclear sclerosis in both eyes, mild non-proliferative diabetic retinopathy[4] ("NPDR"), and presbyopia.  ECF No. 10-1 at 540.

---

[3] Arthropathy is "a disease of a joint."  Merriam-Webster Dictionary: arthropathy, *available at* https://www.merriam-webster.com/dictionary/arthropathy.

[4] "Diabetes can harm the eyes.  It can damage the small blood vessels in the retina, the back part of your eye.  This condition is called diabetic retinopathy."  *See* MEDLINEplus Health Information, Medical Encyclopedia: Diabetes and Eye disease, *available at* https://medlineplus.gov/ency/article/001212.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

In November 2019, Lamb's blood pressure was 137/83. ECF No. 10-1 at 536. Lamb had recently begun taking metoprolol (for high blood pressure). ECF No. 10-1 at 536.

In April 2016, Dr. Krunal Hasmukh Patel evaluated Lamb, then 50 years old, for epigastric abdominal pain and constipation. ECF No. 10-1 at 479. Lamb was diagnosed with epigastric abdominal pain and constipation, prescribed Miralax, and tests were ordered. ECF No. 10-1 at 480. An esophagogastroduodenoscopy (EGD) revealed moderate gastritis. ECF No. 10-1 at 484-85. Crohn's disease was ruled out, and Lamb was treated for reflux esophagitis. ECF No. 10-1 at 485.

In July 2017, Lamb had a weight loss evaluation. ECF No. 10-1 at 519. Lamb was 5'7" tall and weighed 205.5 pounds. ECF No. 10-1 at 521. Lamb's mental status was negative for acute abnormalities. ECF No. 10-1 at 522. Lamb's Norco prescription was refilled. ECF No. 10-1 at 523. Lamb was counseled on nutrition, physical activity, and behavior management. ECF No. 10-1 at 523.

In August 2017, Lamb complained of dizziness, fatigue, and leg weakness. ECF No. 10-1 at 517. Lamb was diagnosed with multiple medication interactions, her glycopyrrolate was discontinued, her gabapentin was decreased, her simvastatin was temporarily suspended, her Norco was refilled, and she was prescribed metoclopramide HCl. ECF No. 10-1 at 518.

In September 2017, Lamb was given 1-month refills for Norco and Toradol. ECF No. 10-1 at 515. In October 2017, Lamb's 1-month prescription for Norco (a

7

narcotic) was refilled. ECF No. 10-1 at 512. Lamb's diagnoses of sciatica, migraines, lumbar disc disease with radiculopathy, lumbar facet arthropathy were noted. ECF No. 10-1 at 513.

Later in October 2017, Dr. Anupkumar Kalabhai Patel evaluated Lamb for chronic back pain. ECF No. 10-1 at 486. Lamb was 52 years old. ECF No. 10-1 at 487. Lamb was taking Norco and gabapentin for chronic back and right leg pain. ECF No. 10-1 at 486. Lamb admitted she had been noncompliant with her low sugar diet, but had been taking metformin regularly and her glucose was 92. ECF No. 10-1 at 486, 488. Lamb was also taking lisinopril-hydrochlorothiazide regularly. ECF No. 10-1 at 486. Lamb's blood pressure was 115/72. ECF No. 10-1 at 486. She weighed 213 pounds. ECF No. 10-1 at 487. She was diagnosed with sciatic pain for which she was already taking Norco. ECF No. 10-1 at 488. She was prescribed ibuprofen for breakthrough pain, and refused a physical therapy referral due to the long drive. ECF No. 10-1 at 488. Lamb was also diagnosed with diabetes mellitus, hypertension, and GERD, for which her medications were continued. ECF No. 10-1 at 488.

In November 2017, nerve conduction studies and an EMG showed abnormal findings suggestive of neuropathic changes in the right lower extremity, and evidence of sensory abnormalities suggestive of lesion distally to the dorsal root ganglia. ECF No. 10-1 at 492. However, the possibility of radiculopathy was not ruled out. ECF No. 10-1 at 492.

8

Also in November 2017, Lamb complained of trouble sleeping due to an uncontrollable urge to move her legs associated with leg pain and cramps, that was eased if she got up and walked. ECF No. 10-1 at 509. Lamb was diagnosed with restless leg syndrome and prescribed Mirapex. ECF No. 10-1 at 510. Lamb was 5'7" and weighed 213 pounds. ECF No.10-1 at 509. Lamb's blood pressure was 115/70. ECF No. 10-1 at 509.

In December 2017, Lamb was seen for a Norco refill due to complaints of migraines with nausea. ECF No. 10-1 at 506. Lamb was referred to a neurologist. ECF No. 10-1 at 508.

In January 2018, Dr. Cynthia Lindsey, Ph.D., evaluated Lamb's medical records and found there was no objective medical evidence of a mental impairment. ECF No. 10.1 at 109.

In February 2018, Dr. Sheryl Smith evaluated Lamb's medical records and found that Lamb suffers from intervertebral disc displacement–lumbar region, radiculopathy of the lumbar region, lumbar facet arthropathy, and migraines. ECF No. 10-1 at 108. Dr. Smith found Lamb was limited to light work. ECF No. 10-1 at 108. In a March 2018 Physical Residual Functional Capacity Assessment, Dr. Smith stated that Lamb can: occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds; stand and/or walk up to six hours in an eight hour day; sit up to six hours in an eight hour day; do unlimited pushing/pulling (except as shown for lifting/carrying); can climb ramps and stairs without limits; can balance, kneel,

9

crouch, and crawl without limits; can frequently climb ladders/ropes/scaffolds; and can frequently stoop. ECF No. 10-1 at 111-12.

In February 2018, Lamb was evaluated by Dr. Bradley Saylors at the request of the Disability Determinations Services. ECF No. 10-1 at 530. Dr. Saylors both reviewed Lamb's medical records and evaluated her in person. ECF No. 10-1 at 530. Lamb complained of: chronic back pain that started three years ago, aggravated by movement, laying, and sitting; and depression for the past few years, although she had never been treated, hospitalized, or had suicidal thoughts. ECF NO. 10-1 at 530. Lamb's hypertension and high cholesterol were well-controlled by medication. ECF No. 10-1 at 530. Dr. Saylors noted that Lamb denied mood changes, depression, suicidal ideation, nervousness, anxiety, difficulty concentrating, or difficulty sleeping at night. ECF No. 10-1 at 531. Lamb's exam results were: neurological exam was normal; motor exam showed good tone and 5/5 strength bilaterally in all muscle groups; reflexes were normal; sensory exam was normal; gait was normal; she was able to bend and squat without difficulty; and grip strength was normal and adequate bilaterally. ECF No. 10-1 at 531. Lamb's mental status was: alert and oriented; cooperative; did not appear depressed or anxious; was able to communicate; recent and remote memory were intact; and good insight and cognitive function. ECF No. 1-1 at 531. X-rays showed Lamb's lumbar spine had no misalignment or fracture, and the intervertebral disc spaces were preserved. ECF No. 10-1 at 532. Dr. Saylors found no medical evidence to support a decrease in function due to her allegations of

back pain, diabetes, hypertension, or hypercholesterolemia. ECF No. 10-1 at 532. He recommended a psychiatric evaluation due to her history of depression, although she did not appear depressed when he examined her. ECF No. 10-1 at 532. He also stated that Lamb should be able to: sit, walk, and/or stand for a full workday; lift/carry without limitations; hold a conversation; respond appropriately to questions; and carry out and remember instructions. ECF No. 10-1 at 532.

In April 2018, Lamb was seen by Dr. Gregory Bevels, a family doctor, for lumbar disc pathology, radiculopathy, and migraines. ECF No. 10-1 at 624. Her Norco was refilled and she was referred for a sleep study. ECF No. 10-1 at 625. In August 2018, Dr. Bevels prescribed Imitrex for Lamb's migraines. ECF No. 10-1 at 612.

In October 2018, Lamb underwent sleep studies due to excessive daytime sleepiness. ECF No. 10-1 at 587, 592. Lamb was 5'7" tall, weighed 221 pounds, and her blood pressure was 112/62. ECF No. 10-1 at 587. Lamb was diagnosed with obstructive sleep apnea. ECF No. 10-1 at 588. Also in October, Lamb was seen by Dr. Bevels for back pain. ECF NO. 10-1 at 609. had tenderness on palpation, and muscle spasm in her back, and was diagnosed with intervertebral disc displacement in the lumbar region, lumbar disc disease with radiculopathy, lumbar facet arthropathy, hypertension and migraines. ECF No. 10-1 at 610. Lamb's Topamax (for migraines) was increased and her Imitrex was refilled. ECF No. 10-1 at 610.

11

In December 2018, Lamb reported: back pain; leg numbness; numbness of her fingers; depression; and difficulty sleeping at night. ECF No. 10-1 at 608. Lamb said the Norco was not helping much, and she was unable to afford physical therapy, but she had been dieting and had lost eight pounds. ECF No. 10-1 at 608. A depression screening was positive for depression. ECF NO. 10-1 at 607. Lamb had normal movement in all extremities, joint tenderness, muscle tenderness, lumbar back pain, and right paraspinous muscle pain - lumbar. ECF No. 10-1 at 607. X-rays of her lumbosacral spine showed facet arthropathy at L4-5 and L5-S1. ECF No. 10-1 at 614. X-rays of her cervical spine were negative. ECF No. 10-1 at 613. Lamb was diagnosed with lumbar back pain with radiculopathy affecting her right leg, other intravertebral disc displacement in the lumber region, lumbar facet arthropathy, essential hypertension, obesity, hyperlipidemia migraines, type 2 diabetes mellitus, depression, diabetic neuropathy, and numbness and tingling in her right hand. ECF No. 10-1 at 607. Lamb's nortriptyline and Norco were refilled. ECF No. 10-1 at 608.

In January 2019, Lamb was evaluated for depression and daily crying. ECF No. 10-1 at 608. Lamb was not taking her medication, nortriptyline, due to possible side effects. ECF No. 10-1 at 597. The nortriptyline was discontinued and Lamb was prescribed Lexapro. ECF NO. 10-1 at 605.

In January 2019, Lamb was evaluated by Dr. Khaldoun Soudan, a nephrologist, for a renal disorder. ECF No. 10-1 at 580. Lamb was 5'7", weighed 220 pounds, her blood pressure as 116/74, and her diabetes was controlled. ECF No 10-1

at 580.  Lamb was diagnosed with an acute kidney injury ("AKI") secondary to low water intake versus NSAID (nonsteroidal anti-inflammatory drug) nephropathy. ECF No. 10-1 at 585.  Lamb was instructed to discontinue taking diclofenac, discontinue her ACE inhibitor and thiazide diuretics, and avoid all NSAIDs.  ECF No. 10-1 at 585.  Lamb was prescribed amlodipine besylate (for high blood pressure). ECF No. 10-1 at 585.

At a follow-up visit in February 2019, Lamb reported chronic back pain, improvement in her depression, no decreased energy, and no fatigue.  ECF No. 10-1 at 601.  Lamb was diagnosed with lumbar back pain with radiculopathy affecting her right leg, other intervertebral disc displacement in the lumbar region, radiculopathy in the lumbar region, type 2 diabetes mellitus without complications, essential (primary) hypertension, depression, diabetic neuropathy, and constipation.  ECF No. 10-1 at 601-02.  Lamb was prescribed Lexapro and Norco.  ECF No. 10-1 at 602.

In June 2019, Dr. Soudan found Lam's acute kidney injury was improved and her creatinine was stable.  ECF NO. 10-1 at 623.  Lamb was reminded to avoid NSAIDs.  ECF No. 10-1 at 623.

In June 2019, Lamb was evaluated for right peripheral neuropathy, right sciatica, and new right hip pain.  ECF No. 10-1 at 710.  Lamb complained of numbness and tingling in her right hand caused by repetitive grasping and relieved by shaking her hand.  ECF No. 10-1 at 710.  Lamb also complained of dull, nagging low back pain in the lumbar region, worse on the right than left.  ECF No. 10-1 at 710.  She also

13

complained of neck pain, joint pain, and stiffness in her joints and neck.  ECF No. 10-1 at 711.  Lamb had muscle tenderness and spasm in the lumbar spine.  ECF No. 10-1 at 713.  Her right hip had a mildly limited range of motion.  ECF No. 10-1 at 713.  Lamb's psychiatric exam was normal.  ECF No. 10-1 at 713.  Lamb was diagnosed with carpal tunnel syndrome in her right arm, right side sciatica, right hip pain, and long term use of opiate analgesic.  ECF No. 10-1 at 714.  A pain management program and weight reduction were recommended.  ECF NO. 10-1 at 714.

In July 2019, Lamb complained of "pins and needles" sensation, stabbing, and throbbing in her right hand, and somewhat more severe low back pain.  ECF No. 10-1 at 705.  Lamb's psychiatric exam was normal.  ECF No. 10-1 at 708.  Lamb was diagnosed with carpal tunnel syndrome in her right arm, right side sciatica, and long term (current) use of opiate analgesic, and prescribed gabapentin, meloxicam, omeprazole, tramadol, and trazodone.  ECF No. 10-1 at 708.

In August 2019, Lamb reported that the severity of her low back and right leg pain had not changed, but that her mobility was improved.  ECF No. 10-1 at 700.  An MRI of her lumbar spine showed foraminal stenosis at L4-5 on the right.  ECF No. 10-1 at 703.  A lumber epidural steroid injection series was recommended.  ECF No. 10-1 at 703-04.

In September and October 2019, Lamb's pain was unchanged, her medications were refilled, and she had a lumbar epidural steroid injection.  ECF No. 10-1 at 687-89, 690-93, 695-98.  In November, Lamb reported that her pain was somewhat less

14

severe, it was interfering less with her daily activities and sleep, and her mobility was improved. ECF No. 10-1 at 682. However, Lamb's need for pain medications had not changed. ECF No. 10-1 at 682.

By December 2019, Lamb's pain was more severe and caused mild functional impairment, but it interfered with her sleep less than before, and her mobility was improved. ECF No. 10-1 at 677. Lamb's medications were refilled. ECF No. 10-1 at 680.

In January 2020, Lamb complained of less severe right hand pain, and continued right leg pain. ECF No. 10-1 at 672. Zofran (ondansetron hcl) (an antiemetic) was added to her prescriptions. ECF No. 10-1 at 675.

In February 2020, Lamb had new cervical spine pain that was aggravated by looking up and relieved by lying down for a few minutes. ECF No. 10-1 at 666. Lamb had posterior neck pain and muscle spasm bilaterally in her lumbar spine. ECF No. 10-1 at 669. Lamb was diagnosed with cervicalgia, her medications for gabapentin, trazodone, and Tylenol-codeine were refilled, and she was instructed as to neck exercises. ECF No. 10-1 at 670-71.

Also in February 2020, Lamb was evaluated by Dr. Daniel Renois, a primary care doctor. ECF No. 10-1 at 621. Lamb was diagnosed with diabetes, essential hypertension, and anemia. ECF No. 10-1 at 621-22. Dr. Renois treated Lamb's diabetes. ECF No. 10-1 at 619.

15

In March 2020, Lamb was seen again for carpal tunnel syndrome, sciatica, right hip pain, and cervicalgia. ECF No. 10-1 at 660. Her medications were refilled in March, April, May, and June 2020. ECF No. 10-1 at 644, 655, 660.

In July 2020, Lamb's carpal tunnel syndrome was treated with a nerve block injection. ECF No. 10-1 at 757.  was seen in August, September, October 2020, for medication refills. ECF No. 10-1 at 737, 743-44, 750. In October, Lamb was also prescribed a low back brace for arthritis. ECF No. 10-1 at 737.

### C.    March 2019 Administrative Hearing

In 2019, Lamb appeared at her hearing with her attorney and a VE. ECF No. 10-1 at 56. Lamb claimed a worsening of her condition since the prior decision denying her benefits on May 11, 2017. ECF No. 10-1 at 58.

Lamb testified that she was 52 years old, 5' 7" tall, and weighed 214 pounds. ECF No. 10-1 at 59. Lamb was not married, could drive, and was a high school graduate. ECF No. 10-1 at 59-60. Lamb lived with her daughter and did not have any income. ECF NO. 10-1 at 64.

Lamb last worked in 2015 at a certified nursing assistant ("C.N.A."). ECR No. 10-1 at 60. Lamb had worked as a C.N.A. for 17 or 18 years. ECF No. 10-1 at 60, 64. Lamb testified that, when she worked as a C.N.A., she lifted 300 to 400 pound patients. ECF No. 10-1 at 67. Sometimes a lift was used, but sometimes the C.N.A.s had to lift patients themselves. ECF No. 10-1 at 67.

Lamb testified that her medications relieved her symptoms, and that she had no medication side effects. ECF No. 10-1 at 60. She could walk for 10 minutes, stand for 10 minutes, sit for 10 to 15 minutes, and lift up to 10 pounds. ECF No. 10- 1 at 60-61. Lamb was not receiving any mental health treatment. ECF No. 10-1 at 61.

Lamb could do housework, cook, wash dishes, mop, sweep, make beds, do laundry, and shop, but did not vacuum, do yard work, cut grass, or do any gardening. ECF No. 10-1 at 61-62. Lamb testified that her son-in-law took care of the yard. ECF No. 10-1 at 61.

Lamb then testified that her medications did not work, which she had told her doctor, but they had not been changed. ECF no. 10-1 at 62. Lamb further clarified that she did a little bit of housework at a time before she had to stop and rest because her back and legs would start hurting. ECF No. 10-1 at 62-63. In an hour of housework, Lamb had to stop and rest two to four times, and sometimes had to lay down and take a pain pill. ECF No. 10-1 at 63.

Lamb testified that she takes hydrocodone for pain and gabapentin for nerve pain. ECF No. 10-1 at 63. Her pain is also relieved by propping up her legs. ECF No. 10-1 at 63-64.

Lamb had a nerve conduction study in 2017 because of her back and leg pain and numbness that goes down to her feet. ECF no. 10-1 at 64-65. Lamb was getting Toradol injections for her back pain. ECF No. 10-1 at 66. Lamb has also been

17

diagnosed with non-proliferative diabetes retinopathy, which had impaired both her near and distance vision.  ECF No. 10-1 at 65.  Lamb takes medicine for her diabetes. ECF No. 10-1 at 65.

Lamb testified that she could not do any job that required her to stand or walk six hours out of an eight hour day, five days per week, because her back would probably "go out."  ECF No. 10-1 at 65.

Lamb took aspirin as a blood thinner, and also took blood pressure medication. ECF No. 10-1 at 65-66.  Lamb said she has blood pressure problems due to the stress of not being able to do the things she used to do.  ECF No. 10-1 at 66.

The VE testified that a C.N.A. is: DOT 355.674-014, medium work (but can sometimes be heavy), and SVP 4.  ECF No. 10-1 at 68.

The ALJ posed a hypothetical involving a person that is 52 years old, has a high school education, and can perform light work.  ECF No. 10-1 at 69.  The VE testified that such a person could not work as a C.N.A.  ECF No. 10-1 at 68.  The VE further testified that such a person (with a work history as a C.N.A.) would not have any transferable skills for sedentary work.  ECF No. 10-1 at 68.

D.    **January 2021 Administrative Hearing**

Lamb appeared at her 2021 administrative hearing with her attorney and a VE.  ECF No. 10-1 at 36.  Lamb was 55 years old.  ECF No. 10-1 at 38.  At the hearing, Lamb's representative amended her disability onset date from May 5, 2015 to March 31, 2019, which is the same date she was last insured.  ECF No. 10-1 at 47.

Lamb last worked in 2015, doing patient care.  ECF No. 10-1 at 38.  Lamb sometimes helped patients with dressing, but mostly sat with them.  ECF No. 10-1 at 38.  She did not have to do any lifting.  ECF No. 10-1 at 38.  Before that, Lamb worked for nine years at Central Louisiana Home Healthcare as a C.N.A.  ECF No. 10-1 at 39, 46.  Lamb had a C.N.A. license.  ECF No. 10-1 at 40.  Lamb also worked as a C.N.A. for Capri Health (Health Central Louisiana).  ECF No. 10-1 at 46, 51.  She had to help lift some patients that needed assistance, but did not have to lift more than 40 pounds.  ECF No. 10-1 at 39.  Lamb also did home health care.  ECF No. 10- 1 at 46.

Before that job, Lamb was a housekeeper at the Louisiana Special Education Center for a little while, lifting up to about 10 pounds.  ECF No. 10-1 at 40, 51.  Lamb testified that she cannot lift five pounds now because of her back problems.  ECF No. 10-1 at 40.  Lamb can stand for about 30 minutes, then she has to sit or move around. ECF No. 10-1 at 40.

Lamb testified that she lives alone, but her daughter visits and takes care of her household chores, cleaning, and grocery shopping.  ECF NO. 10-1 at 40-41.  Lamb can drive, but her driving is limited because she cannot sit long due to her back problems.  ECF No. 10-1 at 41.  Lamb can also go to the grocery store.  ECF No. 10-1 at 41.

Lamb testified that she has muscle spasms every other night, and she has carpal tunnel syndrome in both hands but mostly in the right.  ECF No. 10-1 at 41.

Lamb is left-handed. ECF No. 10-1 at 41. Lamb does not have trouble using her left hand for things like turning doorknobs, buttoning shirts, or holding small objects for a short time. ECF NO. 10-1 at 41. If she holds objects too long, she drops them. ECF No. 10-1 at 41-42.

Lamb testified that she is depressed and has sudden bouts of crying. ECF NO. 10-1 at 42. She talks to her daughter and her sisters on the phone. ECF No. 10-1 at 42. She does not go to social events or church. ECF NO. 10-1 at 42. If Lamb is around a group of people, she usually leaves because she does not want to be around them. ECF No. 10-1 at 42-43. If she watches TV, she starts crying. ECF NO. 10-1 at 43. She also has difficulty remembering things. ECF No. 10-1 at 43. Lamb takes medication for her depression, but does not receive any other treatment. ECF No. 10-1 at 45. She does not know if the medication is helping. ECF No. 10-1 at 45.

On a typical day, when Lamb gets up in the morning, she washes her face, bathes, brushes her teeth, then sits on the couch and turns the TV off and on. ECF No. 10-1 at 44. She tries to do household chores (washing dishes or mopping) a little bit at a time. ECF No. 10-1 at 45. She stops when her back hurts, sits down, and puts a heating pad on it. ECF No. 10-1 at 44.

Lamb is having "therapy" for her neck, but her insurance denied therapy for her back. ECF No. 10-1 at 45. She takes migraine medication but still has migraines every other day. ECF No. 10-1 at 45.

The VE testified that Lamb's C.N.A. work at Central Louisiana Home Health and Capri Health was that of a nurse assistant – DOT 355.674-014, medium, semiskilled, SVP 4.  ECF No. 10-1 at 48.  Lamb's job at the Louisiana Special Education Center (Central Louisiana Home Healthcare) was as a housekeeping cleaner – DOT 323.687-014, light, unskilled, SVP 2.  ECF No. 10-1 at 49.  Lamb also worked as a personal care technician, or companion, in 2015.  That was part-time work that lasted 6 months or less, so it was not substantial gainful activity.  ECF No. 10-1 at 49-50.

The ALJ posed a hypothetical to the VE involving an individual with Lamb's past relevant work, who is limited to: light work; no more than occasional climbing of ramps and stairs; cannot climb ladders, ropes, or scaffolds; and only occasional balancing, stooping, kneeling, crouching, and crawling.  ECF No. 10-1 at 49.  The VE stated that such an individual would not be able to work as a nurse assistant (C.N.A.), but would be able to do her past relevant work as a housekeeper.  ECF No. 10-1 at 49-50.  She would also be able to do light work as: a cafeteria attendant (DOT 311.677-010, light, unskilled, SVP 2, 66,109 jobs nationally); a fast foods worker (DOT 311.472-010, light, unskilled, SVP 2, 1,455,000 jobs nationally); and a sales attendant in the retail trade industry (DOT 299.677-010, light work, unskilled, SVP 2, 211,382 jobs nationally).  ECF No. 10-1 at 52-53.

The ALJ posed a second hypothetical with the same limitations set forth in the

21

first hypothetical, and the added limitations of being off-task at least 15 percent of

the workday (for any reason, including symptoms, the need to additional breaks, and medication side effects). ECF No. 10-1 at 50. The VE testified that such a person would not be able to do any of her past work or any other work in the national economy. ECF No. 10-1 at 50.

E.    **ALJ's Findings.**

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Lamb (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. *See Greenspan*, 38 F.3d at 237.

23

In the case at bar, the ALJ found that Lamb has not engaged in substantial gainful activity since May 12, 2017, and that she met the insured status requirement through March 31, 2019.  ECF No. 10-1 at 19.  The ALJ also found that Lamb has severe impairments of lumbar degenerative disc disease, radiculopathy, facet arthropathy, and obesity, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1.  ECF No. 10-1 at 19.

At Step No. 5, the ALJ found that Lamb has been unable to perform any of her past relevant work since May 12, 2017.  ECF No. 10-1 at 23.  The ALJ further found that, since May 12, 2017, Lamb has the residual functional capacity to perform light work except that she can: only occasionally climb ramps and stairs; only occasional balance, stoop, kneel, crouch, and crawl; and can never climb ladders, ropes, or scaffolds.  ECF No. 10-1 at 21.

Prior to March 12, 2017, Lamb was closely approaching advanced age, but on September 12, 2020 her age category changed to an individual of advanced age.  ECF No. 10-1 at 24.  Prior to September 12, 2020, transferability of job skills was not material because the medical-vocational guidelines supported a finding that Lamb was not disabled.  ECF No. 10-1 at 24.  There were light work, unskilled jobs that existed in significant numbers in the national economy that Lamb could have performed, such as cafeteria worker, fast food worker, and sales attendant.  ECF No. 10-1 at 24.

However, beginning on September 12, 2020, due to Lamb's age category changing, a finding of disabled was directed by Medical-Vocational Rule 202.06.

The ALJ concluded that Lamb was not under a disability within the meaning of the Social Security Act at any time through March 31, 2019, the date last insured. Therefore, Lamb was not entitled to DIB.

The ALJ further concluded that, because Lamb has been disabled since September 12, 2020, as directed by Medical-Vocational Rule 202.06, she was entitled to SSI beginning on September 12, 2020.  ECF No. 10-1 at 25.

## II.  Law and Analysis

### A.  Scope and Standard of Review

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. *See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole.  The substantiality of the

evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the factfinder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

**B.    The ALJ's/Commissioner's final decision is supported by substantial evidence.**

Lamb contends the ALJ failed to follow the Appeals Council remand order. Therefore, remand is necessary for: (1) the ALJ apply the Paragraph B analysis appropriately to Lamb's mental impairment of depression; and (2) the ALJ failed to articulate a rational, medical, and evidentiary basis for ruling that Lamb could

perform the activities identified by the residual functional capacity for light work on a regular and continuous basis.

### 1.    Substantial evidence supports the ALJ's finding that Lamb does not suffer from "severe" depression.

The Appeals Council noted that, although the ALJ found Lamb suffers from depression that is not severe, she did not discuss and evaluate the "B" criteria required to determine the severity of mental impairments in 20 C.F.R. § 404.1520 and § 419.920a.  The Appeals Council directed the ALJ to (1) evaluate Lamb's mental impairments in accordance with the special technique described in 20 C.F.R. § 4042.1520a and § 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described; and (2) to proceed with the sequential evaluation process as necessary.  ECF No. 10-1 at 147.

Lamb contends that remand is necessary for the ALJ to apply the Paragraph B analysis appropriately to Lamb's mental impairment of depression.  Section 404.1520a(b) states:

> (b) Use of the technique.
>> (1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). . . . If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairments(s) and document our findings in accordance with the paragraph € of this section.

27

> (2) We must then rate the degree of functional limitation resulting from the impairment(s) n accordance with the paragraph (c) of this section and record our findings as set out in paragraph (e) of this section.

Lamb also contends the ALJ failed to fully develop the administrative record by ordering a consultative examination, post-hearing interrogatories, or with medical expert testimony, although she was ordered to do so by the Appeals Council. However, it is noted that the Appeals Council only directed the ALJ to hold a hearing and "take any further action needed to complete the administrative record." ECF No. 10-1 at 147. The Appeals Council did not order the ALJ to supplement the medical evidence.

Contrary to Lamb's assertion, the ALJ evaluated Lamb's depression pursuant to the factors set forth in § 404.1520a(b). The ALJ discussed the evidence supporting her finding that Lamb has depression pursuant to the four factors, including that the medical records noted her crying during her examination in December 2018, and her reports of episodes of crying in January 2019. ECF No. 10-1 at 20. The medical evidence both before and after December 2018 and January 2019 noted Lamb's "appropriate" or "normal" mood and affect at her doctor visits. ECF No. 10-1 at 20. The ALJ did not accept Dr. Lindsey's finding of no mental impairment. ECF No. 10-1 at 25. However, the ALJ found that Lamb's depression did not affect her ability to work, finding: (1) no limitation in the area of understanding, remembering, or applying information because, although she reported problems with remembering,

she did not have a problem following instructions; (2) no limitation in the area of interacting with others because she spends time with others and has no problems getting along with others; (3) mild limitation in the area of concentrating, persisting, or maintaining pace because she claims to be able to pay attention as long as she wants but is unable to finish what she starts; and (4) no limitation in the area of adapting or managing herself, despite her reported inability to handle stress. ECF No. 10-1 at 20-21.

Although Lamb complains the ALJ "played doctor" and made her own, inexpert medical assessment of Lamb's depression, Lamb also conversely complains the ALJ relied on the medical assessments of the disability determinations examiners. In fact, the ALJ appropriately relied on the medical assessments finding that Lamb has depression but that it does not affect her ability to work, and explained her reasoning pursuant to a "Paragraph B" analysis.

Lamb points out that Dr. Saylors recommended she undergo a psychiatric evaluation due to her "history" of depression, although she did not appear depressed when he examined her. ECF No. 10-1 at 532. Dr. Saylors noted in Lamb's medical history, "Patient has experienced depression for past few years, after stopping working. She has never seen psychiatry. She has never been hospitalized. She has never had suicidal thoughts." ECF No. 10-1 at 530. In his evaluation, Dr. Saylors noted: "Denied mood changes, depression, suicidal ideation, nervousness, anxiety, difficulty concentrating or sleeping at night." ECF No. 10-1 at 531. In her mental

Status exam notes, Dr. Saylors wrote: "Alert and oriented to time place, and situation. Cooperative with exam. Does not appear depressed or anxious. Able to communicate with no deficits. Recent and remote memory intact. Good insight and cognitive function." ECF No. 10-1 at 531. Dr. Saylors concluded, "Depression: Recommend Psychiatric evaluation given her history, however she does not appear depressed today." ECF No. 10-1 at 532. Dr. Saylors made it clear that he recommended a psychiatric evaluation due to the history Lamb provided, and not because of any symptoms she displayed when he evaluated her. ECF No. 10-1 at 532.

As Lamb concedes, the evidence to support her claim of depression is "scanty." Although Lamb argues the ALJ should have ordered a consultative examination for her, the burden of proving she has a severe impairment is on the claimant. *See Greenspan*, 38 F.3d at 237. An examination at government expense is not required unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision. *See Anderson v. Bowen*, 887 F.2d 630, 634 (5th Cir. 1989); *see also Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996); *Wren v. Sullivan*, 925 F.2d 123, 127 (5th Cir. 1991); *Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989). The ALJ's decision that Lamb's depression is not a severe impairment is based on the opinions of two physicians. No doctor found Lamb's depression to be severe or disabling. It was not necessary for the ALJ to order a consultative examination in order to make that determination.

30

Therefore, substantial evidence supports the ALJ's/Commissioner's finding that Lamb's depression is not severe.

> ### 2.    The ALJ's finding that Lamb could perform light work prior to September 12, 2020 is supported by substantial evidence.

Lamb also contends the ALJ failed to articulate a rational medical and evidentiary basis for ruling that Lamb could perform the activities identified by the residual functional capacity for light work on a regular and continuous basis prior to September 12, 2020. Lamb points out that the ALJ failed to include a narrative discussion of the evidence and her conclusions.

The ALJ wrote at length about the evidence, both medical and testimonial, concerning Lamb's residual functional capacity in both her initial findings and her supplemental findings on remand. ECF No. 10-1 at 21-23, 135-39. The ALJ presented well-reasoned findings to support her conclusion that Lamb is able to perform light work, relying on the opinions of Dr. Saylors and Dr. Smith. After examining and evaluating Lamb, Dr. Saylors concluded that Lamb's back pain, diabetes, hypertension, and hypercholesterolemia did not decrease her functionality, and that she should be able to sit/walk/stand for a full workday, lift/carry without limitations, hold a conversation, respond appropriately to questions, and carry out and remember instructions. ECF No. 10-1 at 532. Dr. Smith also found Lamb was able to perform light work because she can: occasionally lift/carry up to 20 pounds; frequently lift/carry up to 10 pounds; stand and/or walk up to six hours in an eight

hour day; sit up to six hours in an eight hour day; do unlimited pushing/pulling (except as shown for lifting/carrying); can climb ramps and stairs without limits; can balance, kneel, crouch, and crawl without limits; can frequently climb ladders/ropes/scaffolds; and can frequently stoop.  ECF No. 10-1 at 108, 111-12.

The ALJ also appropriately addressed Lamb's allegations of disabling pain.  A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.  *See* 20 C.F.R. § 404.1529(c)(4).  Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence.  *See Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) (*citing Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)); *see also Chambliss v. MassanarI did.  i*, 269 F.3d 520, 522 (5th Cir. 2000).  Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.  *See Chambliss*, 269 F.3d at 522.

32

The factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence. *See Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints, and to articulate reasons for rejecting any subjective complaints. *See Falco v. Shalala*, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Lamb's pain and credibility in her first opinion (ECF No. 10-1 at 138-39):

> The claimant experiences some symptoms and limitations; however, the record does not fully support the severity of the claimant's allegations. The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. As noted above, the claimant reported she has no problems with personal care, she needed no reminders to take care of personal needs or grooming, she needed no help or reminders to take her medications, she reported she was capable to simple meal preparation and light cleaning, she could drive, she shopped once or twice a week and she was able to count change and use a checkbook. The claimant reported she socialized on the phone daily and she went to church on a regular basis. The claimant stated that on a typical day, she bathed, prepared meals, watched TV, and did some light cleaning. Moreover, the claimant consistently reported she was capable of performing her activities of daily living independently to treatment providers.
>
> Additionally although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. . . .
>
> The undersigned finds that the evidence contained in the record fails to support allegations of a debilitating and work-precluding impairment or

combination of impairments. The treatment notes indicate at best, ailments that appear troublesome, but do not impose limitations of such significance to preclude sustained competitive employment. The record establishes that none of the claimant's treating physicians have even recommended that the claimant not seek employment, nor is there any evidence that the claimant has required surgery or hospitalization.

In her second opinion, the ALJ further stated, as to Lamb's pain (ECF No. 10-1 at 22-23):

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent. The claimant testified that she could stand for about thirty minutes and then would need to sit and move around. She also noted limitation in the Adult Function Report. She is able to drive and go to [the] grocery store. However, the treatment records do not reflect that the claimant is a[s] limited as she alleges.
>
> In October 2017, the claimant reported taking Norco and gabapentin, but she did not have pain currently. It would come and go. Her examination appeared to be normal. Testing in November 2017 noted abnormal findings what were suggestive of neuropathic changes in the right lower extremity. In August 2017, the claimant's left leg muscle power was 4/5. In September 2017, October 2017, and December 2017, the claimant had normal movement in all extremities, sensation was normal, and gait and stance were normal. However, during this time her diagnoses included lumbar back pain with radiculopathy and lumbar facet arthropathy. In April 2018, the claimant had normal movement in all extremities, but also had tenderness and lumbar back pain. Her gait and stance were normal (Exhibit B7F). In December 2018, the claimant had normal movement in all extremities, but also had tenderness and lumbar back pain. Her gait and stance were normal. In January 2019, February 2019, the claimant had normal movement in all extremities, sensation was normal, and gait and stance were normal.
>
> A[n] MRI of the lumbar spine in August 2019 showed multilevel pattern for disc pathology noted mainly at L4-5 and less so at L5-S1. There was slight arthritic spurring at the disc margins (Exhibit B8F). The claimant sought treatment at Fairbanks Orthopedics with the treatment records

starting in June 2019. Treatment records reflect that that the claimant mostly had antalgic gait, tenderness in the lumbar spine with 4/5 muscle strength. The claimant received a steroid injection. In October 2020, the claimant was given a low back brace. Except for these records, which noted that antalgic gait was 4/5 muscle strength, the remaining of the treatment records are mostly normal with only a few findings. In fact, the records from Fairbanks Orthopedic are not consistent with the record as a whole. Even with the findings above, the record does not reflect that the claimant would be unable to perform a range of light exertional work. . . .

After careful consideration of the evidence, along with all statements and reports of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision. . . .

In sum, the claimant's severe impairments and related symptoms limit her to perform in g the residual functional capacity above. The undersigned considered all limitations in formulating the residual functional capacity, and the overall record does not support any greater limitations.

Since the ALJ in this case has made the mandatory indication of the basis for her credibility choices concerning claimant's complaints, and since her choices are not unreasonable, her finding that Lamb's pain would not prevent Lamb from performing light work prior to September 12, 2020 is proper. *See Carry v. Heckler*, 750 F.2d 479, 485-86 (5th Cir. 1985).

Finally, Lamb contends the ALJ erred in finding her diabetes is a not severe impairment because it causes blurry vision. However, Lamb's diabetic retinopathy was only mild. Her vision was blurry due to age-related presbyopia.

Lamb also contends the ALJ erred in failing to find her carpal tunnel syndrome is a severe impairment.  However, Lamb did not allege disability due to carpal tunnel syndrome in her applications for benefits, nor at her hearings.  Her carpal tunnel syndrome was diagnosed in June 2019, and treated conservatively with medications.  In July 2020, Lamb had a nerve block injection.  Moreover, her carpal tunnel syndrome was mostly in her right arm, while Lamb is left-handed.  There is no evidence, either medical or testimonial, that Lamb's carpal tunnel syndrome affected her ability to work prior to September 12, 2020.

Therefore, substantial evidence supports the ALJ's/Commissioner's finding that Lamb was not disabled prior to September 12, 2020.

III. <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Lamb's appeal be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy

of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _18th_ day of September 2023.

Joseph H.L. Perez-Montes
United States Magistrate Judge